Good morning. May it please the Court. Excuse me. My name is Gregory Bartolome. I'm with the Office of the Federal Public Defender. And I'm representing Mr. Owens for purposes of this appeal. This was a very short trial. It was a two-day matter. And total witnesses were five, three law enforcement and two civil lay witnesses who appeared on behalf of the appellant. And the first day was simply the presentation of evidence. The second day was the closing arguments and the deliberations. And that was the extent of the entire trial. The evidence pertaining to appellant's conduct, I think, can be condensed to two basic points. He drove a car that day, and he opened a trunk to retrieve a license plate when the officer was standing next to him. And that was when the officer made certain observations relevant to the weapons with which he was charged. There had already been a stipulation with regards to his prior. So basically, as far as conduct, that's what this gentleman did. There was no other ---- Didn't he also drive the vehicle with a weapon on the seat under his leg by his position? Yes. There was ---- That's mere presence? In other words, you sit on a weapon and you're just there? Well, that presumes that he was able to somehow know that the weapon was there. Okay. Then he tells the officers, hey, the correct license plate for this vehicle are in the trunk. Goes around and opens the trunk. There are the license plates and the rifle. Yes. Mere presence? I think ---- well, this was an unusual case because in considering your question, we presented or the appellant presented an actual witness who testified that she was the legal owner of those weapons and that she personally put those weapons in that vehicle during the time it was inoperable, which was for some time prior to the arrest, and that ---- I don't understand. It seems to me that mere presence is not even as a concept necessarily applicable to a crime like this, because the crime is almost mere presence. The crime is knowledge, which the jury was instructed about, and control, which the jury was also instructed about. And if those two things exist, then that's the crime. It doesn't have to do anything, right? Well, yes. I understand what the Court's saying. But the entire defense was that appellant did not know. Right. And you put on that defense and there was an instruction about that defense. So what was the mere presence going to add? Well, the mere presence would have explained to the jury that he could have been present next to the weapons, but that mere proximity by itself was not enough to convict him of the offense of being a felon in possession. He had a fine knowledge, and no one told them. Except the entire crux of the government's case was presence. They presented nothing else. And in reviewing the record, I just don't see what else they're doing except saying you can infer, perhaps, that because there were so many weapons in the car, including in the passenger area of the car, that therefore he must have known. But they presented nothing else. And that has to be understood or weighed against the fact of an affirmative witness who says, I put them there and I never told them that they were there. I put them there because that was the safest place to put the weapons to keep them away from my kids. Can you explain a little more about the physical issue of where this gun in the front seat was? Was it on the front seat? Was he sitting on top of it? Where was it? My understanding, again, I wasn't trial counsel, is that it was within the area between the cushions so that you wouldn't actually be sitting on it. That was one. There was another one that was under a jacket that was actually on the seat. Yes, some sort of a jacket. And, Your Honor, I don't know how heavy the jacket was. The jacket was not used. My impression is that he was literally sitting on the gun. Is that not right? I don't believe there was any evidence or testimony that that actually was the case. It was certainly in the area where both gentlemen were sitting. And the second gentleman also testified at the trial, and he testified he did not see a weapon. So that was the second witness which appellant presented. Do we know whose jacket it was that the gun was under? No. I don't even think there was evidence with regards to who owned the jacket. But in any event, what the government has ---- But this is what's bothering me. This is what I'm trying to envision. If it was on the seat, it wasn't under the seat, it wasn't next to the seat, it was on the seat. One of them. One of them, yes. All right. So the wife put a gun on the seat and thought that nobody was going to know it was there? Well, you couldn't open the vehicle without having the key, and apparently you couldn't open the trunk without the key, and the vehicle didn't have a battery. Well, he subsequently put a battery in there. Those weapons had been in there for some time. That was her testimony. But he knew that the proper license plates were in the trunk. So he knew at least something that was in the trunk. Well, I believe that it was a question of his son putting the proper license plate on and perhaps the plates were in the trunk while the vehicle was inoperable. We never got that far in terms of the case or what was presented for purposes of the record. What would the presence instruction have added? I guess I'm asking Judge Berzon's questions in a slightly different way to give you a chance to persuade me. I'm not sure I understand what necessary element of sort of analytic precision he would add that the jury does not already have by the instruction as to knowledge and control. Because the government presented nothing else other than him being there, the mere presence would have told the jury that, yeah, you can find that he was there, he was near the weapons, but that does not necessarily connect him to being a participant or actually knowing that those weapons were in the trunk. And the proximity issue was important enough. It was, in fact, the theory of the case. It was important enough, and in light of the government's lack of any additional evidence, we feel that the court should have instructed on the mere presence. Your Honor, we also rely upon this Court's decision in the Negrete Gonzalez case, and that was a case where a defendant actually went from a parking lot with some individuals to a private home. But there the crime was selling the drugs, right? Yes. And the point of the instruction was to tell the jury that he could be there the whole time, he could know it was happening, right? But he still could not be guilty. Yes. Right? But here, if he knew that the guns were there and had control of them, he was guilty. It's a different crime. That's what I'm having a hard time with. It's a crime where he didn't actually have to do anything. Except in this, in our case, what the government is saying is evidence is he drove a car, there were guns there, our car was registered to him, so therefore he had to know. It's an inference position. And he was sitting on top of a gun. I can't tell you whether they were actually sitting on it or not. And I think one of the testimony from the officer that retrieved the weapon was that it was facing back away from them, but that does not mean that it was not in the area that they were in. But nevertheless, the government's entire position and entire argument is an inference argument, and we don't think that that's enough evidence to have justified the district court in denying the appellant's request for the instruction. Can I change gears and ask a different question? One of the four weapons was not charged in the indictment. That's correct. That's the weapon for which the serial number was obliterated. Do you know why that weapon was not charged in the indictment? No, I do not. And I believe that Mr. Lee, who was the assistant U.S. attorney, didn't really explain it, but indicated that there may have been some other reasons for it or they may have felt that there was insufficient proof to charge it at that time. I'll ask the other side of that question. Right. But Mr. Sands in his appeal in his briefs does raise that as the second point, which he only preserves for the future in case there's some kind of reversal from the Supreme Court. Your Honor, I think the fact that we presented two affirmative witnesses, I think, was not given sufficient credit by the district court when the jury instruction colloquy was taking place with counsel. I think it's particularly interesting that the U.S. attorney twice agreed with the defense attorney in giving the mere presence instruction. He was asked and he indicated that I'm not going to object to it. That was the second time. And it was only upon further comments by the district court judge with regards to there is no crime if the jury believes the defendant's position, once that statement was made, that's when the assistant U.S. attorney then said, well, I'm retracting my position. We believe that the U.S. attorney's original position was the correct one because even now, in hindsight and looking back at the evidence that was presented, we don't see that additional evidence was presented. I think we've heard it. In order to save some time, why don't you stop now and then we'll give you a minute. Thank you very much. Thank you. Good morning. Joan Rufinock from the District of Arizona appearing on behalf of the United States. With regard to the court's question on the position of the gun at ER pages 91 and 92, the evidence is that the gun was approximately 13 inches from the driver's side door and the barrel was pointing towards the back of the seat and it was under a jacket and it would have been on the seat and would have been under the driver's right leg as he drove. So it was not back in the crack between the vertical and the horizontal. It was actually on the physical seat. That's correct because there were two pistols. The Derringer, without the serial number, was wedged between the seats closer to the passenger. The other pistol was on the seat under the gun such that it was 13 inches from the driver's side door and would have been under the leg of the driver. And what did the wife say about where she put those two guns? She said, as I recall, she said that she thought the gun was in the holster at the time that she put it into the passenger compartment and she put it under a blanket that was on the seat, which really didn't jive with the officer's testimony as to how they found the gun next to the holster but not in the holster and under a jacket. The district court found in this case that under the defendant's statement of the facts that a crime would not have occurred and therefore a mere presence instruction was not warranted. As this Court knows, a mere presence instruction presupposes that a crime has occurred or is occurring and that the defendant is present but has no knowledge and no participation in that crime. In the instant case, we have two individuals in a car. There is, contrary to the assertion in the reply brief, there is no evidence whatsoever in the trial record that the passenger was a prohibited possessor. Now, the Court was aware of that, but the jury was not. That information never went to the jury. So the Court found that if the defendant was merely in the vehicle, had no knowledge and no control over those guns, no crime occurred and therefore a mere presence instruction was unwarranted because it didn't fit the facts or the law. And on the other hand, the Court found that the other instructions adequately covered the theory of defense, which was I didn't know the guns were there and I never asserted any control over them because I didn't know they were there. So the defendant's theory of the defense was more than adequately covered by the instructions that were given by the Court. And with regard to what information there was, because Negrete Gonzales says that if the evidence is based solely on the presence of the defendant, that he's entitled to that instruction. In this case, we have the defendant's longtime live-in girlfriend admit that she was the owner of those guns. She admitted that the defendant knew she owned all of those guns when she inherited them from her brother. She also admitted that she put all of those guns into the car. And then we have the defendant, who is the registered owner of the car, had been the registered owner for an entire year. He was in possession of the keys and driving the vehicle. He popped open the trunk for the officer or opened the trunk with the key for the officer, which is what revealed the two rifles in the trunk. And he was driving, sitting on one of the pistols. And the government submits that under those facts, a mere presence instruction was not warranted because it did not fit either the facts or the law of the case. Could you turn briefly to the Apprendi issue and just tell me whether or not you think that we need to hold this case for the Blakely case in the Supreme Court or not? In other words, would the – could the Blakely case be determinative of this one on the Apprendi issue? I don't think so. Well, I would submit, Your Honor, that the current state of the law is that an enhancement that does not increase a sentence beyond a statutory maximum does not need to be submitted. Right. But the current state of the law is that it doesn't require it. I guess what I'm asking you is, is the Blakely case, were it to – were the defendant in that case to win, different from this one in some material way that we could be certain that it wouldn't affect this case? I really can't answer that. And that's because Blakely deals with an upward departure under a State sentencing scheme, whereas we've got an enhancement under the guidelines. And I don't know – I mean, we're presupposing that the court is going to find in such a manner and then don't know how the court's going to get there. So I really can't – unless I see the analysis, I can't answer whether it would directly apply to this case or not. But I would submit that on the current law, the court should affirm both the conviction and the sentence. And then if for some reason there's a change in the law subsequently, defendant has preserved the issue to the extent that it's preservable. And depending on – They can file a cert petition in the meanwhile. Right. And then – and I don't even know whether it would be cognizable under a 2255 at this point, again, because we don't know the analysis that the court's going to use to get where it gets. They wouldn't have to do a 2255. They could simply file a cert petition. Oh, yeah. I suppose that would be. If there are no further questions? Do you know why the derringer wasn't charged in the complaint? I don't – what I can tell you is what's in the record. What's in the record is there was a discussion by the prosecutor saying that he was not the prosecutor who charged the case, but it was his understanding that the prosecutor who charged the case was aware that the passenger was also a prohibited possessor. And that derringer was closer to the passenger and down – wedged in between the seat and the cushion, and closer to the passenger, and therefore believed it was more probable that the passenger possessed that gun, whereas the defendant possessed the others that were in the trunk and the one that was under his leg. Well, if that's true, why are we using that gun as an enhancement? Because that doesn't mean that he didn't know of the gun's – he didn't know of the gun's presence and didn't have the ability to control it. But you just told us before that the other passenger was not a prohibited possessor. No, Your Honor. What I said was the evidence before the trial jury was that he – there was no evidence to his status, but the district court did know that from discussions. So the derringer got into the sentencing as relevant conduct? Correct. And what you're really saying, I gather, is that they didn't think that they could prove it beyond a reasonable doubt, but they thought they could prove it by a preponderance. And that's the only explanation. That's – and that's the explanation that was offered. But as I said, it's – this is, like, fourthhand by this point. This really does walk right into the Apprenti issue, right? I mean, in the sense that that probably made a difference. Possibly, yes. Thank you very much. Would you like a minute in rebuttal? No, thank you. I have nothing else to add. Thank you. I thank both of you for your helpful arguments this morning. The case of the United States v. Owens is now submitted. It's not marked on my day sheet, but I believe I am correct in saying that the United States v. Rodriguez-Horta is submitted on the briefs. Unless we've got counsel here to argue that, I'll assume that I'm correct. Also not noted on the day sheet, I believe United States v. Sandoval Valencia is submitted on the briefs. And the next case we have for argument is Burgess v. Alameda Housing Authority. Thank you.
judges: T.G. Nelson, W. Fletcher, Berzon